UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
SAINT TROPEZ INC.,

                    Plaintiff,

          - against -                          **MEMORANDUM AND ORDER**

NINGBO MAYWOOD INDUSTRY AND TRADE CO.,          13 Civ. 5230 (NRB)
LTD. and RETRO FOX NEW YORK LLC,

                    Defendants.
----------------------------------------X
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**


        On  July  26,  2013,  plaintiff  Saint  Tropez  Inc.

("plaintiff")  filed  this  action  against  defendants  Ningbo

Maywood Industry and Trade Co., Ltd. ("Ningbo") and Retro Fox

New  York  LLC  ("Retro  Fox")  to  obtain  damages  and  various

equitable  relief  as  a  result  of  Ningbo's  failure  to  properly

manufacture  and  deliver  certain  trademarked  apparel  identified

in  two  purchase  order  contracts.   The  Complaint  alleges  that

roughly  41  percent  of  the  goods  identified  in  the  contracts

were  never  delivered  to  plaintiff,  and  that  those  goods  that

were  delivered  arrived  late  and  were  nonconforming.   In  order

to  mitigate  its  claimed  damages,  plaintiff  moved  by  order  to

show  cause  for  seizure  of  the  undelivered  goods,  which  had  been

shipped  to  Retro  Fox,  Ningbo's  New  York-based  consignee.   On

August 8 and 22, 2013, the Court ordered the goods seized.   On

October 10, 2013, after neither defendant had made an appearance in the case, the Court permitted plaintiff to sell the seized goods, and ordered that the proceeds be held in escrow.

Retro Fox has not responded to the Complaint and has not appeared in this action by counsel. Ningbo appeared on October 28, 2013 for the limited purpose of opposing the jurisdiction of the Court and moving to dismiss the Complaint. Thus, presently before the Court is Ningbo's motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(5) for insufficient service of process, Rule 12(b)(2) for lack of jurisdiction, and Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Also before the Court is plaintiff's cross-motion for default judgment against Retro Fox. For the reasons set forth below, Ningbo's motion to dismiss the Complaint is denied and plaintiff's cross-motion for default judgment against Retro Fox is denied without prejudice.

**BACKGROUND**[1]

## I.   **The Purchase Order Contracts**

Plaintiff is an apparel manufacturing, importing, and marketing company incorporated in Delaware with a principal place of business in Miami Beach, Florida. Compl. ¶ 1. On January 16 and February 28, 2013, plaintiff entered into two purchase order contracts with Ningbo, a Chinese clothing manufacturer, for the manufacture and delivery of goods labeled with plaintiff's trademarked "Black Ice" logo. Id. ¶ 13. The contracts listed the goods to be delivered and provided the following relevant information: (1) Ningbo, with an address in China, was identified as the vendor; (2) plaintiff was identified as the buyer, and the address listed under its name was 214 West 39th Street in Manhattan, which is the address of plaintiff's exclusive sales and operations agent, Commonwealth Licensing Corporation ("Commonwealth") (Jacklone Aff. ¶ 1); (3) in the "Ship To" field, the contracts simply stated, "TBA"[2]; (4)

---

[1] While the following facts are derived primarily from the Complaint ("Compl.") and the exhibits annexed thereto, we also cite to the Declaration of Michael Gruber ("Gruber Decl."), filed July 31, 2013, and the exhibits annexed thereto; the Affidavit of Dean Jacklone ("Jacklone Aff."), filed December 26, 2013; the Affidavits of Steven Ki, filed on December 26, 2013 ("2013 Ki Aff."), January 23, 2014 ("Jan. 2014 Ki Aff."), and March 31, 2014 ("March 2014 Ki Aff."), and the exhibits annexed thereto; and the Affidavits of Yafei Ge, filed on November 26, 2013 ("2013 Ge Aff."), January 9, 2014 ("Jan. 2014 Ge Aff."), and April 2, 2014 ("April 2014 Ge Aff.").

[2] However, three of the four bills of lading list "New York, NY" as both the place of delivery and the port of discharge (the other lists "Los Angeles, CA"). Gruber Decl., Exs. 2-5. The bills of lading also list Retro Fox, with an address in Flushing, New York, as the consignee of the goods. Id.

the contracts also stated that the goods were to be "LDP – NJ"[3] and "In warehouse"[4] by "6/6/2013" and "6/18/2013"; and (5) the total price for the contracts was listed at approximately $954,000.  Compl., Exs. A, B.

## II.  **The Negotiation of the Contracts**

Dean Jacklone, an officer and principal of Commonwealth, stated in an affidavit that, while working on behalf of plaintiff, he negotiated the contracts in New York with two individuals who represented Ningbo: Steven Ki, Ningbo's sales agent, and Yafei Ge, Ningbo's CEO.  Jacklone Aff. ¶¶ 5, 8.  In addition to meeting with Ki and Ge in New York on several occasions, Jacklone stated that he also negotiated with Ge's business partner Helen, who was in China.  Id. ¶ 5.  According to Jacklone, the parties agreed that the goods were to be delivered to New York.  Id. ¶¶ 5, 14.

Ki submitted affidavits corroborating these assertions. See 2013 Ki Aff.; Jan. 2014 Ki Aff.  Specifically, he stated: (1) that he managed Ningbo's sales and customer relationships in New York; (2) that he helped Ningbo secure the purchase order contracts with plaintiff; (3) that Ge and Helen directed

---

Invoices sent to Retro Fox further identify New York as the port of discharge.  Id., Exs. 2-4.
[3] "LDP" is an abbreviation for "landed duty paid."  According to Dean Jacklone, the Commonwealth employee who negotiated the contracts on plaintiff's behalf, "LDP – NJ" means that "the Customs port of entry for the goods would be the Port of New York and New Jersey, where container ships dock and unload."  Jacklone Aff. ¶ 12.
[4] The contracts do not specify the location of the warehouses.

4

him not to accept prices lower than certain amounts or agree to delivery schedules without their consent; (4) that Ningbo had agreed to pay him a commission for his work; (5) that he had several meetings with Ge and Jacklone in New York regarding the contracts with plaintiff; (6) that Ge was frequently in New York for business, including Ningbo's business with plaintiff, and was in New York for a multi-month period when plaintiff's purchase orders were generated and in process; and (7) that when Ge was in New York, she worked out of an office in Manhattan's Garment District. See 2013 Ki Aff.; Jan. 2014 Ki Aff.; March 2014 Ki Aff. Attached to one of Ki's affidavits were emails between Ki, Ge, and Helen which supported Ki's statements regarding Ge's presence in New York and Ki's work as a commissioned sales agent for Ningbo. See Jan. 2014 Ki Aff., Exs. A–G.

Ge, in her affidavit, acknowledged that she did travel to New York[5] and at least once spoke to Ki in person. Jan. 2014 Ge Aff. ¶ 14. However, she claimed that all negotiations regarding the contracts with plaintiff were conducted via email. 2013 Ge Aff. ¶¶ 10-12; Jan. 2014 Ge Aff. ¶ 18. She also argued that Ki, who "often facilitated communications"

---

[5] In fact, an email between Ge (also known as "Jaen"), Helen, and Ki reveals that Ge had a cell phone with a New York City area code. See 2013 Ki Aff., Ex. G.

between Ningbo and plaintiff, was neither an employee nor an agent of Ningbo.[6]  Jan. 2014 Ge Aff. ¶¶ 6, 17, 19.

### III. <u>Ningbo's Alleged Breach and the Instant Suit</u>

According to the Complaint, 59 percent of the goods were delivered to plaintiff, albeit late and with numerous defects. Compl. ¶ 8.  The other 41 percent, which were shipped but not delivered, were held in warehouses, consigned to Retro Fox. <u>Id.</u> ¶ 9.  Plaintiff had arranged to sell the goods to a customer in New York at a profit of $341,250.  <u>Id.</u> ¶¶ 24, 28; Jacklone Aff. ¶ 5.  However, because of Ningbo's failure to timely delivery non-defective goods, plaintiff's customer canceled its order.  Compl. ¶ 28.  Consequently, plaintiff alleges damages of $341,250 in lost profits plus an additional $12,000 in warehouse charges and other expenses.  <u>Id.</u> ¶ 24.

On July 26, 2013, plaintiff sued Ningbo for breach of contract and conversion of goods, and Retro Fox for interference with contract, and requested an order of replevin or for specific performance so that it could obtain and sell the undelivered goods.  Also on July 26, plaintiff moved by order to show cause for seizure of the goods.  Later that day, another District Judge, sitting in Part I, signed the order to show cause.

---

[6] However, emails between Ge, Helen, and Ki show that Ningbo had arranged to pay Ki a commission for his work involving the contracts with plaintiff. <u>See</u> 2013 Ki Aff., Ex. D; Jan. 2014 Ge Aff., Ex. 1.

IV. **Service of Process**

Plaintiff served Retro Fox on July 29, 2013 via UPS overnight mail (ECF No. 12), and again on August 2, 2013 by "nail and mail" service (ECF No. 8). Plaintiff attempted to effectuate service on Ningbo by mailing a copy of the summons and complaint to Ningbo at its address in China and to Retro Fox's address in New York (under the theory that Retro Fox could accept service on Ningbo's behalf).

In addition, on July 29, 2013, Jacklone provided a copy of the summons, complaint, and order to show cause to Ki. Jacklone Aff. ¶¶ 19, 20; 2013 Ki Aff. ¶ 22. Ki stated that he gave these documents to Ge later that day in an office on West 37th Street in Manhattan where Ge frequently worked when she was in New York. March 2014 Ki Aff. ¶ 2. Ki also helped Ge find an attorney in Flushing, New York to represent Ningbo. 2013 Ki Aff. ¶ 22. At a hearing on May 20, 2014,[7] the attorney, Terrence Worms, testified that he had spoken with Ki on the phone and had met with Ge on two occasions in August 2013 to discuss the possibility of representing Ningbo.[8] Tr. 5, 9, 13-15. Worms further testified that Ge had given him a copy of the summons and complaint before one of their meetings. Tr. 19. The testimony of Worms, combined with the affidavits of

---

[7] References preceded by "Tr." refer to the transcript of the hearing held on May 20, 2014 regarding service of process.
[8] Ultimately, Ningbo did not to retain Worms. Tr. 10.

Jacklone and Ki, provide convincing evidence that Ge was served with process.[9]  Tr. 25, 26.

## V.   Seizure of the Goods

After the time expired for Ningbo and Retro Fox to respond to the Complaint and order to show cause, the Court ordered the goods seized and permitted them to be sold, provided that the proceeds would be held in escrow pending the outcome of the litigation or further order of the Court.  On October 31, 2013, plaintiff's counsel informed the Court in a telephone conference that all of the goods had been sold.  During a telephone conference on April 9, 2014, counsel stated that the proceeds of the sales amounted to approximately $100,000.

## VI.  The Present Motions

On November 25, 2013, Ningbo moved to dismiss the Complaint and to vacate the prior orders of the Court on three grounds: first, that Ningbo was not properly served under the Hague Convention; second, that the Court lacks personal jurisdiction over Ningbo because the company does not have sufficient contacts with New York; and finally, that the Complaint fails to state a cause of action because it incorrectly relies on the Uniform Commercial Code ("UCC") rather than the United Nations Convention on Contracts for the

---

[9] Although Ge, in an affidavit, denied receiving a copy of the summons and complaint, the evidence is otherwise, as the Court so found at the May 20 hearing.  Tr. 25, 26.

International Sale of Goods ("CISG").  On December 26, 2013, plaintiff filed its opposition and cross-moved for default judgment against Retro Fox.

**DISCUSSION**

I.  **Motion to Dismiss Under Rule 12(b)(5)**

Ningbo first argues that the Complaint should be dismissed because plaintiff's attempt to serve it through registered mail does not comply with the Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague Convention"), Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. 6638.  While Ningbo is correct that the Hague Convention applies to service abroad on a Chinese corporation, and that plaintiff failed to follow the proper procedures for serving process under that Convention, service was nonetheless properly effected here through the delivery of the summons and complaint to Ge, Ningbo's CEO.  Indeed, under Rule 4(h)(1)(B), a foreign corporation may be served in a judicial district of the United States "by delivering a copy of the summons and complaint to an officer or agent authorized to receive service of process."  See Volkswagenwerk Aktiengesellschaft v. Schlunk, 486 U.S. 694, 707 (1988) ("The only transmittal to which the [Hague] Convention applies is a transmittal abroad that is required as a necessary part of service.").  Because the testimony of Worms and the affidavits of Jacklone and Ki

demonstrate that Ge was furnished with a copy of the summons and complaint while she was in New York, we hold that plaintiff has satisfied its burden of proving adequate service.[10] Dickerson v. Napolitano, 604 F.3d 732, 752-53 (2d Cir. 2010) ("When a defendant moves to dismiss under Rule 12(b)(5), the plaintiff bears the burden of proving adequate service." (internal alterations and quotation marks omitted)).  We therefore deny Ningbo's motion to dismiss the Complaint under Rule 12(b)(5).

## II.  Motion to Dismiss Under Rule 12(b)(2)

Ningbo also contends that the Complaint must be dismissed because the Court lacks personal jurisdiction over it.  To defeat a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction before discovery is conducted, a plaintiff "need only make a prima facie showing that the court possesses personal jurisdiction over the defendant."  DiStefano v. Carozzi N.A., Inc., 286 F.3d 81, 84 (2d Cir. 2001). "Plaintiffs can make this showing through their own affidavits and supporting materials . . . that, if credited, would suffice to establish jurisdiction over the defendant."  In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000, 230 F. Supp. 2d 376,

---

[10] We therefore need not address plaintiff's argument that Ki was an agent who could receive service of process on behalf of Ningbo.  If he was an agent, then service was properly effected by Jacklone's delivery of the summons and complaint to him.  If he was not an agent, then he was an appropriate person under Rule 4(c)(2) to serve the summons and complaint on Ge.

381 (S.D.N.Y. 2002) (citing Whitaker v. Am. Telecasting Inc., 261 F.3d 196, 208 (2d. Cir. 2001)).  In deciding whether a plaintiff has met this burden, "all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party." A. I. Trade Fin. v. Petra Bank, 989 F.2d 76, 79-80 (2d Cir. 1993). However, where a "defendant rebuts plaintiff['s] unsupported allegations with direct, highly specific, testimonial evidence regarding a fact essential to jurisdiction -- and plaintif[f] do[es] not counter that evidence -- the allegation may be deemed refuted." Merck & Co., Inc. v. Mediplan Health Consulting, Inc., 425 F. Supp. 2d 402, 420 (S.D.N.Y. 2006).

"In deciding a question of personal jurisdiction, district courts must conduct a two-part analysis, looking first to the state's long-arm statute and then analyzing whether jurisdiction comports with federal due process." Mario Valente Collezioni, Ltd. v. Confezioni Semeraro Paolo, S.R.L., 264 F.3d 32, 37 (2d Cir. 2001).

### A. New York's Long-Arm Statute

Under New York's long-arm statute, a New York court may exercise personal jurisdiction over a non-domiciliary who in person or through an agent: (1) "transacts any business within the state"; or (2) "contracts anywhere to supply goods or

services in the state." N.Y. C.P.L.R. § 302(a)(1). For jurisdiction under this statute, the claims must arise out of the acts that form the basis for personal jurisdiction. Id. As discussed below, plaintiff has adequately made a prima facie showing of personal jurisdiction under both the "transacting business" and "supplying goods" prongs.

**1. Ningbo Transacted Business in New York**

"A nondomiciliary 'transacts business' under C.P.L.R. § 302(a)(1) when he purposefully avails himself of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws." CutCo Indus., Inc. v. Naughton, 806 F.2d 361, 365 (2d Cir. 1986) (internal alterations and quotation marks omitted). "No single event or contact connecting the defendant to the forum state need be demonstrated; rather, the totality of all defendant's contacts with the forum state must indicate that the exercise of jurisdiction would be proper." Id. "While the defendant need not be physically present in the state for a court to exercise personal jurisdiction, there must be some transaction attributable to the one sought to be held which occurs in New York." JP Morgan Chase Bank, N.A. v. Law Office of Robert Jay Gumenick, P.C., 08 Civ. 2154 (VM), 2011 U.S. Dist. LEXIS 46319, at *12-13 (S.D.N.Y. Apr. 21, 2011) (internal quotation marks omitted). "[T]he overriding criterion necessary to establish a

transaction of business is some act by which the defendant purposefully avails itself of the privilege of conducting activities within New York." <u>Licci ex rel. Licci v. Lebanese Canadian Bank, SAL</u>, 673 F.3d 50, 61 (2d Cir. 2012) (internal quotation marks omitted).

Plaintiff alleges several examples of Ningbo transacting business in New York: Ki, acting as Ningbo's sales agent,[11] frequently met with Jacklone, plaintiff's agent, in New York to negotiate the terms of the purchase order contracts; Ge, Ningbo's CEO, traveled to New York to participate in several of these negotiations; and Ningbo arranged to have Retro Fox, located in Flushing, New York, serve as the consignee of the goods, which, according to the bills of lading, were to be delivered to New York and eventually sold to plaintiff's customer in New York.

These are legally sufficient allegations that Ningbo transacted business in New York. <u>See</u> <u>SAS Group, Inc. v.</u>

---

[11] As dictated by the statute, the transaction of business can be conducted either by defendant "in person or through an agent." N.Y. C.P.L.R. § 302(a)(1). The term "agent" is broadly interpreted in this context. <u>Grove Press, Inc. v. Angleton</u>, 649 F.2d 121, 122 (2d Cir. 1981). Rather than require a formal agency relationship, the Court looks to the realities of the commercial situation. <u>CutCo</u>, 806 F.2d at 366. To be considered an agent for jurisdictional purposes, one must have transacted business in New York "for the benefit of, and with the knowledge and consent of" the defendant. <u>Id.</u> Under this standard, Ki qualifies as Ningbo's agent, and his actions may be imputed to Ningbo. The fact that he was never ultimately paid a commission for his work is of no moment. <u>Scholastic, Inc. v. Stouffer</u>, No. 99 Civ. 11480 (AGS), 2000 U.S. Dist. LEXIS 11516, at *18-19 (S.D.N.Y. Aug. 14, 2000) (finding agency relationship despite the fact that agent was never paid for his services).

Worldwide Inventions, Inc., 245 F. Supp. 2d 543, 549 (S.D.N.Y. 2003) ("[C]ontract negotiations in New York will satisfy § 302(a)(1) if the discussions substantially advanced or were essential to the formation of the contract or advanced the business relationship to a more solid level." (internal alterations and quotations marks omitted)); Scholastic, Inc., 2000 U.S. Dist. LEXIS 11516, at *13 (activity sufficient to establish a jurisdictional presence "may include the solicitation of business by defendants, contract negotiations between the parties, meetings at which defendants were present, or letters sent and phone calls made by defendants to plaintiffs").

Moreover, there is no question that these activities are closely connected to plaintiff's claims against Ningbo, thus satisfying § 302(a)(1)'s requirement that each cause of action must arise out of the acts that form the basis for personal jurisdiction.  See Best Van Lines, Inc. v. Walker, 490 F.3d 239, 246 (2d Cir. 2007) ("[A] suit will be deemed to have arisen out of a party's activities in New York if there is an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York" (internal quotation marks omitted)).

Accordingly, the Court finds sufficient grounds to exercise personal jurisdiction over Ningbo pursuant to the "transacting business" prong of § 302(a)(1).

## 2. Ningbo Contracted to Supply Goods in New York

The "supplying goods" prong of § 302(a)(1) provides an additional ground upon which to find personal jurisdiction. Under this prong, a defendant may be subject to personal jurisdiction in New York if it "contracts anywhere to supply goods . . . in the state." N.Y. C.P.L.R. § 302(a)(1). Here, although the two purchase order contracts at issue say "LDP – NJ," and the goods were ultimately sent to warehouses in New Jersey and California, plaintiff has offered several reasons to believe that Ningbo intended for the goods to be shipped to New York. First, three of the four bills of lading list New York as the place of delivery and the port of discharge. Gruber Decl., Exs. 2-4. The bills of lading also list Retro Fox, with its New York address, as the consignee. Id. Invoices sent to Retro Fox confirm that New York was the designated port of discharge. Id. Finally, Jacklone stated in his affidavit that he "obtained Ningbo's commitment to specially manufacture and deliver to New York the goods," and that "LDP – NJ" meant that the "Customs port of entry for the goods would be the Port of New York and New Jersey." Jacklone Aff. ¶¶ 5, 12. These statements are supported by an email attached to his affidavit

in which Helen, Ningbo's co-owner, indicated her understanding that the port of discharge for the goods was supposed to be New York. Jacklone Aff., Ex. 1 ("The port should be N.Y [sic] not LA ,[sic] right?").

APC Commodity Corp. v. Ram Dis Ticaret A.S., 965 F. Supp. 461 (S.D.N.Y. 1997), is instructive on this issue. In that case, the Court found that the defendant had contracted to supply goods to New York even though the goods were ultimately shipped to Port Elizabeth, New Jersey. APC, 965 F. Supp. at 465. The Court relied on a fax sent by the plaintiff to the defendant providing for "C&F NY," invoices sent by the defendant stating "CFR / New York," and bills of lading which listed New York as the port of discharge. Id. The Court held that this "purposeful activity directed at New York [wa]s sufficient to confer personal jurisdiction pursuant to [§ 302(a)(1)]." Id.; see also Bohn v. Bartels, 620 F. Supp. 2d 418, 425 (S.D.N.Y. 2007) ("New York courts may exercise jurisdiction over a nondomiciliary who contracts outside this State to supply goods or services in New York even if the goods are never shipped or the services are never supplied in New York" (internal quotation marks omitted)); Laumann Mfg. Corp. v. Castings USA, 913 F. Supp. 712, 717 (E.D.N.Y. 1996) ("The key issue is that the nondomiciliary contracted and intended to send goods to New York.").

Thus, we find that plaintiff has made a prima facie showing that Ningbo contracted to supply goods in New York. Because plaintiff's claims arose out of these contracts, we hold that the Court has personal jurisdiction over Ningbo under the second prong of § 302(a)(1).

**B. Due Process is Satisfied**

Having concluded that there is an adequate basis for the exercise of personal jurisdiction over Ningbo, the Court must next determine whether the exercise of jurisdiction over it comports with the Due Process Clause of the Fourteenth Amendment, which requires "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (internal quotation marks omitted); see also World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980) ("[T]he defendant's conduct and connection with the forum state [must be] such that he should reasonably anticipate being haled into court there."). There are two aspects of the due process analysis: (1) the minimum contacts inquiry, and (2) the reasonableness inquiry. Chloe v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 171 (2d Cir. 2010).

Although the constitutional due process issue is a separate question, "[o]rdinarily . . . if jurisdiction is

proper under the CPLR, due process will be satisfied because CPLR § 302 does not reach as far as the constitution permits." Topps Co. v. Gerrit J. Verburg Co., 961 F. Supp. 88, 90 (S.D.N.Y. 1997). Here, Ningbo had sufficient minimum contacts with New York that the exercise of personal jurisdiction over it satisfies due process for the same reasons discussed above: Ki and Ge negotiated the contracts with Jacklone in New York, Ningbo designated New York as the place of delivery and port of discharge for most of the goods, and Ningbo consigned the goods to Retro Fox.  See Chloe, 616 F.3d at 171 (concluding that "assertion of personal jurisdiction over [defendant] comports with due process for the same reasons that it satisfies New York's long-arm statute").

    With respect to the reasonableness inquiry, even where an out-of-state defendant is deemed to have purposefully availed itself of the forum state, a plaintiff "must still demonstrate that the exercise of jurisdiction does not 'offend traditional notions of fair play and substantial justice' and is thus reasonable under the Due Process Clause."  Id. at 173 (quoting Asahi Metal Indus. Co. v. Superior Court of Cal., Solano Cnty., 480 U.S. 102, 113 (1987)).  In determining the reasonableness of exercising jurisdiction, courts must consider the following factors: (1) "the burden on the defendant," (2) "the interests of the forum State," (3) "the plaintiff's interest in obtaining

18

relief," (4) "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and (5) "the shared interest of the several States in furthering fundamental substantive social policies." Asahi, 480 U.S. at 113 (internal quotation marks omitted). "Where the other elements for jurisdiction have been met, dismissals on reasonableness grounds should be 'few and far between.'" Gucci Am., Inc. v. Frontline Processing Corp., 721 F. Supp. 2d 228, 246 (S.D.N.Y. 2010) (quoting Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 575 (2d Cir. 1996)).

Although there may be some burden on Ningbo in defending itself in New York, its decision to conduct substantial business here suggests that it is not an unreasonable burden. See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 305 F.3d 120, 129-30 (2d Cir. 2002) ("Even if forcing the defendant to litigate in a forum relatively distant from its home base were found to be a burden, the argument would provide defendant only weak support, if any, because the conveniences of modern communication and transportation ease what would have been a serious burden only a few decades ago." (internal quotation marks omitted)). The second factor appears to be neutral in this case, as do the fourth and fifth factors. And the third factor favors keeping New York as the forum state since plaintiff has a strong interest in obtaining redress for its

claims, and New York may be the only place in the United States in which Ningbo is subject to personal jurisdiction on these claims.   Moreover, New York is where key witness such as Jacklone and Ki are located and where Ningbo's consignee and codefendant Retro Fox is headquartered.

Having considered these factors, the Court concludes that this is not one of the few and far between cases in which the exercise of jurisdiction would be unreasonable despite the fact that plaintiff has satisfied the state law and minimum contacts analyses.   In short, the exercise of personal jurisdiction over Ningbo "comports with traditional notions of fair play and substantial justice, such that it satisfies the reasonableness inquiry of the Due Process Clause."   <u>Chloe</u>, 616 F.3d at 173 (internal citation and quotation marks omitted).

## III.   <u>Motion to Dismiss Under Rule 12(b)(6)</u>

Finally, Ningbo moves to dismiss the Complaint pursuant to Rule 12(b)(6) on the grounds that plaintiff improperly brought this action under the UCC rather than the CISG.   On a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor.   <u>ATSI Commc'ns</u>, 493 F.3d at 98; <u>Grandon v. Merrill Lynch & Co.</u>, 147 F.3d 184, 188 (2d Cir. 1998).

20

The CISG is "a self-executing treaty, binding on all signatory nations, that creates a private right of action in federal court under federal law." Hanwha Corp. v. Cedar Petrochemicals, Inc., 760 F. Supp. 2d 426, 430 (S.D.N.Y. 2011). It "automatically applies to international sales contracts between parties from different contracting states unless the parties agree to exclude its application." Weihai Textile Group Imp. & Exp. Co. v. Level 8 Apparel, LLC, No. 11 Civ. 4405 (ALC), 2014 U.S. Dist. LEXIS 53688, at *15 (S.D.N.Y. Mar. 28, 2014) (internal alterations and quotation marks omitted). Plaintiff is located in the United States and Ningbo is located in China, both of which are signatories to the CISG. See id., at *16 (noting both the United States and China are CISG signatories). There is no allegation that the parties agreed to exclude the application of the CISG to the contracts at issue in this case. Thus, plaintiff's claims are governed by the CISG.[12]

Ningbo argues that the Complaint must be dismissed because it is erroneously premised on the applicability of the UCC. However, the Complaint cites neither the CISG nor the UCC.[13]

---

[12] Unfortunately, "there are few cases discussing claims arising under the CISG." Profi-Parkiet Sp. Zoo v. Seneca Hardwoods LLC, No. 13 Civ. 4358 (PKC)(LB), 2014 U.S. Dist. LEXIS 71289, at *10 (E.D.N.Y. May 23, 2014). However, "the available case law establishes . . . that federal district courts have subject matter jurisdiction over such claims." Id.

[13] Although plaintiff relied on the UCC in its applications to seize and sell the goods, it did not explicitly rely on it in the Complaint.

Rather, it simply alleges that Ningbo failed to timely deliver conforming goods as required by its contracts with plaintiff, and seeks various forms of equitable relief, including replevin and specific performance, to mitigate the resulting damages. This is not incompatible with the CISG.

Indeed, the CISG permits buyers to obtain damages when sellers breach their contractual obligations, and it does not prohibit a court from ordering replevin, specific performance, or other equitable relief when necessary to mitigate those damages. Under the CISG, "[t]he seller must deliver the goods, [] if a date is fixed by or determinable from the contract, on that date," CISG art. 33(a), and "must deliver goods which are of the quantity, quality and description required by the contract and which are contained or packaged in the manner required by the contract," id. art. 35(1). "The seller is liable in accordance with the contract and [the CISG] for any lack of conformity which exists at the time when the risk passes to the buyer . . . ." Id. art. 36(1). "If the seller fails to perform any of its obligations under the contract or [the CISG], the buyer may . . . claim damages," id. art. 45(1)(b) -- which "consist of a sum equal to the loss, including loss of profit, suffered . . . as a consequence of the breach," id. art. 74 -- and "may require performance by the

seller of his obligations," id. art. 46(1).[14]   Thus, the CISG permits plaintiff to seek damages for Ningbo's failure to satisfy its contractual obligations and authorizes the Court to order specific performance.

Therefore, because the Complaint states claims and seeks relief that are not inconsistent with the CISG, we deny Ningbo's motion to dismiss the Complaint under Rule 12(b)(6).

IV.  **Plaintiff's Cross-Motion for Default Judgment Against Retro Fox**

Lastly, we address plaintiff's cross-motion for default judgment against Retro Fox, which has not appeared in this action despite having been served with process on August 2, 2013.   Plaintiff alleges that Retro Fox interfered with its contracts "by refusing to allow Plaintiff its goods," and seeks damages "in at least the sum of $75,000 to be proven at trial." Compl. ¶ 43.

If plaintiff wishes to pursue a default judgment against Retro Fox, it must first seek a certificate of default from the Clerk of Court and then submit a proposed order of default judgment to this Court pursuant to Rule 55 and Local Civil Rule 55.2.   Because plaintiff has not followed these procedural

---

[14] Notably, the CISG allows courts to look to domestic law when deciding whether to order specific performance.   Article 28 states in pertinent part that "a court is not bound to enter a judgment for specific performance unless the court would do so under its own law in respect of similar contracts of sale not governed by this Convention."   CISG art. 28.

requirements, we deny its motion without prejudice to renewal upon compliance with the applicable rules.  See Kendall v. Cuomo, 12 Civ. 3438 (ALC), 2013 U.S. Dist. LEXIS 138424, at *4 (S.D.N.Y. Sept. 26, 2013) (holding that because plaintiff had not "sought, nor been issued, a certificate of default from the Clerk of the Court . . . he did not meet the first step for obtaining an entry of default judgment and his motion must be denied"); Badalamenti v. Country Imported Car Corp., No. 10 Civ. 4993 (SJF), 2012 U.S. Dist. LEXIS 46267, at *6-7 (E.D.N.Y. Feb. 22, 2012) (denying motion for default judgment due to plaintiff's failure to append the Clerk's certificate of default).

However, if plaintiff pursues a default judgment against Retro Fox, it should be aware that a determination of damages will not be made until after the claims against Ningbo are resolved, and will require, at a minimum, a hearing to determine how and to what extent Retro Fox caused plaintiff damages.  See Long Island Hous. Servs. v. Greenview Props., No. 07 Civ. 0352 (ADS)(WDW), 2007 U.S. Dist. LEXIS 95976, at *2 (E.D.N.Y. Dec. 3, 2007), Report and Recommendation, adopted by 2008 U.S. Dist. LEXIS 5704 (E.D.N.Y. Jan. 11, 2008) ("When there are multiple defendants who may be jointly and severally liable for damages alleged by plaintiff, and some but less than all of those defendants default, the better practice is for the

district court to stay its determination of damages against the defaulters until plaintiff's claim against the nondefaulters is resolved.").

Moreover, because the Complaint seeks monetary damages against Retro Fox "in at least the sum of $75,000 to be proved at trial," and provides no basis for calculating these damages, a default judgment will be limited to $75,000. See Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."); Silge v. Merz, 510 F.3d 157, 160 (2d Cir. 2007) ("By limiting damages to what is specified in the 'demand for judgment,' [Rule 54(c)] ensures that a defendant who is considering default can look at the damages clause, satisfy himself that he is willing to suffer judgment in that amount, and then default without the need to hire a lawyer."); Berkley Reg'l Ins. Co. v. James T. Redding, Inc., No. ELH-12-2578, 2013 U.S. Dist. LEXIS 144205, at *2-3 (D. Md. Oct. 3, 2013), Report and Recommendation, adopted by 2013 U.S. Dist. LEXIS 150640 (D. Md. Oct. 21, 2013) (requiring plaintiff to file amended complaint in order to obtain default judgment in excess of amount demanded in original complaint despite use of the term "at least" before the amount); 10 Moore's Federal Practice § 55.34 (3d ed. 2014) and cases cited therein.

## CONCLUSION

Accordingly, for the foregoing reasons, we deny Ningbo's motion to dismiss the Complaint and deny without prejudice plaintiff's motion for default judgment against Retro Fox.


Dated:    New York, New York
          July 16, 2014

                                    NAOMI REICE BUCHWALD
                                    UNITED STATES DISTRICT JUDGE



Copies of the foregoing Order have been mailed on this date to the following:

### Attorneys for Plaintiff

Richard Turyn, Esq.
Daniele Dermesropian, Esq.
Ballon Stoll Bader & Nadler, P.C.
729 Seventh Avenue, 17th Floor
New York, NY 10019

### Attorney for Defendant Ningbo

Ripal J. Gajjar, Esq.
Law Offices of Joe Zhenghong Zhou and Associates, PLLC
136-20 38th Avenue, Suite 10H
Flushing, NY 11354